## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| UNITED STATES OF AMERICA | : | CIVIL ACTION |
|---|---|---|
| v. | : | |
| THE CITY OF PHILADELPHIA and | : | |
| THE CITY OF PHILADELPHIA REDEVELOPMENT | : | NO. |
| AUTHORITY | | |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.                           ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.                                                                    ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court.  (See reverse side of this form for a detailed explanation of special
    management cases.)                                                                       ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.           (X)


| June 5, 2019 | John N. Moscato | United States of America |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| 303-844-1380 | 303-844-1350 | john.moscato@usdoj.gov |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

## Civil Justice Expense and Delay Reduction Plan
### Section 1:03 - Assignment to a Management Track

(a)        The clerk of court will assign cases to tracks (a) through (d) based on the initial pleading.

(b)        In all cases not appropriate for assignment by the clerk of court to tracks (a) through (d), the plaintiff shall submit to the clerk of court and serve with the complaint on all defendants a case management track designation form specifying that the plaintiff believes the case requires Standard Management or Special Management.  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

(c)        The court may, on its own initiative or upon the request of any party, change the track assignment of any case at any time.

(d)        Nothing in this Plan is intended to abrogate or limit a judicial officer's authority in any case pending before that judicial officer, to direct pretrial and trial proceedings that are more stringent than those of the Plan and that are designed to accomplish cost and delay reduction.

(e)        Nothing in this Plan is intended to supersede Local Civil Rules 40.1 and 72.1, or the procedure for random assignment of Habeas Corpus and Social Security cases referred to magistrate judges of the court.

### SPECIAL MANAGEMENT CASE ASSIGNMENTS
### (See §1.02 (e) Management Track Definitions of the
### Civil Justice Expense and Delay Reduction Plan)

Special Management cases will usually include that class of cases commonly referred to as "complex litigation" as that term has been used in the Manuals for Complex Litigation.  The first manual was prepared in 1969 and the Manual for Complex Litigation Second, MCL 2d was prepared in 1985.  This term is intended to include cases that present unusual problems and require extraordinary treatment.  See §0.1 of the first manual.  Cases may require special or intense management by the court due to one or more of the following factors:  (1) large number of parties; (2) large number of claims or defenses; (3) complex factual issues; (4) large volume of evidence; (5) problems locating or preserving evidence; (6) extensive discovery; (7) exceptionally long time needed to prepare for disposition; (8) decision needed within an exceptionally short time; and (9) need to decide preliminary issues before final disposition.  It may include two or more related cases.  Complex litigation typically includes such cases as antitrust cases; cases involving a large number of parties or an unincorporated association of large membership; cases involving requests for injunctive relief affecting the operation of large business entities; patent cases; copyright and trademark cases; common disaster cases such as those arising from aircraft crashes or marine disasters; actions brought by individual stockholders; stockholder's derivative and stockholder's representative actions; class actions or potential class actions; and other civil (and criminal) cases involving unusual multiplicity or complexity of factual issues.  See §0.22 of the first Manual for Complex Litigation and Manual for Complex Litigation Second, Chapter 33.

JS 44   (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

UNITED STATES OF AMERICA

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
John N. Moscato, U.S. Department of Justice, 999 18th Street, South Terrace, Suite 370, Denver, CO 80202; 303-844-1380

## DEFENDANTS

THE CITY OF PHILADELPHIA and
THE CITY OF PHILADELPHIA
REDEVELOPMENT AUTHORITY

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☒ 1  U.S. Government
    Plaintiff

☐ 2  U.S. Government
    Defendant

☐ 3  Federal Question
    *(U.S. Government Not a Party)*

☐ 4  Diversity
    *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                          *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY**<br>☐ 365 Personal Injury - Product Liability<br>☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 835 Patent - Abbreviated New Drug Application<br>☐ 840 Trademark<br>**SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)) | ☐ 375 False Claims Act<br>☐ 376 Qui Tam (31 USC 3729(a))<br>☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Sat TV<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☒ 893 Environmental Matters<br>☐ 895 Freedom of Information Act |
| **REAL PROPERTY**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | **CIVIL RIGHTS**<br>☐ 440 Other Civil Rights<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 445 Amer. w/Disabilities - Employment<br>☐ 446 Amer. w/Disabilities - Other<br>☐ 448 Education | **PRISONER PETITIONS**<br>**Habeas Corpus:**<br>☐ 463 Alien Detainee<br>☐ 510 Motions to Vacate Sentence<br>☐ 530 General<br>☐ 535 Death Penalty<br>**Other:**<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br>☐ 560 Civil Detainee - Conditions of Confinement | **LABOR**<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Management Relations<br>☐ 740 Railway Labor Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Employee Retirement Income Security Act<br>**IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 465 Other Immigration Actions | **FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration<br>☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>☐ 950 Constitutionality of State Statutes |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another District *(specify)*
☐ 6 Multidistrict Litigation - Transfer
☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. § 9601

Brief description of cause:
Cost recovery under CERCLA for past and future costs relating to the Lower Darby Creek Area Superfund Site

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ Yes  ☒ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions)*

JUDGE _____  DOCKET NUMBER _____

DATE
06/04/2019

SIGNATURE OF ATTORNEY OF RECORD
*(signature)*

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: ___U.S. Dept. of Justice, 999 18th Street, South Terrace, Suite 370, Denver CO 80202___

Address of Defendant: ___Langsam Stevens Silver & Hollaender, 1818 Market Street, Suite 2610, Philadelphia, PA 19103-5319___

Place of Accident, Incident or Transaction: ___Delaware County and Philadelphia County___

---

*RELATED CASE, IF ANY:*

Case Number: _____    Judge: _____    Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1.  Is this case related to property included in an earlier numbered suit pending or within one year    Yes ☐    No ☑
    previously terminated action in this court?

2.  Does this case involve the same issue of fact or grow out of the same transaction as a prior suit    Yes ☐    No ☑
    pending or within one year previously terminated action in this court?

3.  Does this case involve the validity or infringement of a patent already in suit or any earlier    Yes ☐    No ☑
    numbered case pending or within one year previously terminated action of this court?

4.  Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights    Yes ☐    No ☑
    case filed by the same individual?

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: ___06/05/2019___    _[signature]_    CO Bar # 30394
                          *Attorney-at-Law / Pro Se Plaintiff*    *Attorney I.D. # (if applicable)*

---

CIVIL: (Place a √ in one category only)

| A. | *Federal Question Cases:* | | B. | *Diversity Jurisdiction Cases:* |
|---|---|---|---|---|
| ☐ 1. | Indemnity Contract, Marine Contract, and All Other Contracts | | ☐ 1. | Insurance Contract and Other Contracts |
| ☐ 2. | FELA | | ☐ 2. | Airplane Personal Injury |
| ☐ 3. | Jones Act-Personal Injury | | ☐ 3. | Assault, Defamation |
| ☐ 4. | Antitrust | | ☐ 4. | Marine Personal Injury |
| ☐ 5. | Patent | | ☐ 5. | Motor Vehicle Personal Injury |
| ☐ 6. | Labor-Management Relations | | ☐ 6. | Other Personal Injury (Please specify): _____ |
| ☐ 7. | Civil Rights | | ☐ 7. | Products Liability |
| ☐ 8. | Habeas Corpus | | ☐ 8. | Products Liability – Asbestos |
| ☐ 9. | Securities Act(s) Cases | | ☑ 9. | All other Diversity Cases |
| ☐ 10. | Social Security Review Cases | | | *(Please specify):* ___U.S. Government Plaintiff___ |
| ☐ 11. | All other Federal Question Cases | | | |
| | *(Please specify):* ___CERCLA, 42 U.S.C. § 9601___ | | | |

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, ___John N. Moscato___, counsel of record *or pro se plaintiff*, do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case
   exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: ___06/04/2019___    _[signature]_    CO Bar # 30394
                          *Attorney-at-Law / Pro Se Plaintiff*    *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

JEFFREY BOSSERT CLARK
Assistant Attorney General
Environment & Natural Resources Division
United States Department of Justice

JOHN N. MOSCATO
Senior Counsel
Environmental Enforcement Section
United States Department of Justice
999 18th Street, South Terrace, Suite 370
Denver, Colorado 80202
Telephone: (303) 844-1380
Facsimile: (303) 844-1350
Email: john.moscato@usdoj.gov
Colorado Bar No. 30394

Attorneys for Plaintiff United States of America

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| | * | |
| | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Case No. _____ |
| | * | |
| THE CITY OF PHILADELPHIA and | * | |
| THE CITY OF PHILADELPHIA | * | |
| REDEVELOPMENT AUTHORITY | * | |
| Defendants. | * | |
| | * | |

**COMPLAINT**

Complaint in
United States v. The City of Philadelphia, et al.

1

The United States of America ("United States"), by authority of the Attorney General and through the undersigned attorneys, acting at the request of the Administrator of the United States Environmental Protection Agency ("EPA") alleges as follows:

## PRELIMINARY STATEMENT

1.      This is a civil action under Section 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended ("CERCLA"), 42 U.S.C. § 9607(a), brought by the United States against the City of Philadelphia ("the City") and the City of Philadelphia Redevelopment Authority ("PRA") (collectively, the "Defendants") for the recovery of past response costs incurred by the EPA in response to releases or threats of release of "hazardous substances," as defined in 42 U.S.C. § 9601(14), at and from the Clearview Landfill.  The waste, soils, and shallow leachate associated with the Clearview Landfill comprise Operable Unit 1 ("OU 1") of the Lower Darby Creek Area Superfund Site (the "Site").  Pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), and 28 U.S.C. § 2201, the United States also seeks a declaratory judgment on Defendants' liability for future response costs to be incurred by the EPA in connection with OU 1 that will be binding on any subsequent action or actions to recover further response costs in connection with the Site.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1345 and 42 U.S.C. §§ 9607 and 9613(b).

3.      This Court has personal jurisdiction over the Defendants as each Defendant was present in the Commonwealth at the time the violations alleged in this Complaint occurred and

Complaint in
United States v. The City of Philadelphia, et al.

2

each Defendant "[t]ransact[ed]. . . business in th[e] Commonwealth," or "caus[ed] harm . . . by

an act or omission in this Commonwealth." 42 Pa. Cons. Stat. Ann. § 5322.

4.      Venue is proper in the Eastern District of Pennsylvania pursuant to 28 U.S.C.

§§1391(b) and (c) and 42 U.S.C. § 9613(b), because the claim arose, and the threatened and

actual releases of hazardous substances occurred, in this District.

## DEFENDANTS

5.      The City is an incorporated municipality within the Commonwealth.

6.      The PRA is a public government agency charged with the redevelopment of the

City.  The PRA was established on October 2, 1945 pursuant to the Urban Redevelopment Law

of 1945.

## FACTUAL BACKGROUND

7.      The Clearview Landfill is located on the east side of Darby Creek near the

intersection of 84th and Lindbergh Boulevard.  The historical footprint of the landfill straddles

the Delaware County and Philadelphia County borders and includes portions of the residential

properties to the east of the Clearview Landfill (hereafter the "Eastwick Neighborhood").

8.      The Clearview Land Development Company operated the Clearview Landfill as

an unlicensed disposal facility for commercial, industrial, institutional, and municipal waste from

the early 1950s until approximately 1973 when the Pennsylvania Department of Environmental

Resources ("PADER") ordered it to cease all waste disposal activities.

9.      Wastes disposed of at the Clearview Landfill contained hazardous substances

within the meaning of 42 U.S.C. § 9601(14) including but not limited to heavy metals, volatile

organic compounds, semi-volatile organic compounds, polyaromatic hydrocarbons, and pesticides at levels that present a threat to human health and the environment.

10.     EPA conducted investigations within and around the Clearview Landfill in 1983 and 1984 and collected surface water, sediment, soil, and leachate samples from the landfill and Darby Creek.  The analytical results from that sampling detected polychlorinated biphenyls ("PCBs") and polyaromatic hydrocarbons ("PAHs") in leachate samples, PAHs in soil samples, and PCBs in both stream and soil samples.  PAHs and PCBs are "hazardous substances" within the meaning of 42 U.S.C. § 9601(14).

11.     In September 1990, EPA observed areas of recent dumping throughout the Clearview Landfill and identified three leachate seeps which were draining into Darby Creek on the western edge of the landfill.  Hazardous substances such as volatile organic compounds ("VOCs"), semi-volatile organic compounds ("SVOCs"), and PAHs were detected in the leachate seeps and in sediments downstream from the landfill.  VOCs and SVOCs are "hazardous substances" within the meaning of 42 U.S.C. § 9601(14).

12.     In May 1998, EPA conducted an area-wide investigation in the vicinity of the Clearview Landfill to identify possible threats to human health and the environment posed by waste sources along Darby Creek.  During this investigation, signs of erosion on the landfill cover along the creek banks, exposed debris piles, and leachate seeps were observed.  Soil and waste samples collected showed contamination with elevated levels of hazardous substances including, but not limited to, heavy metals (lead, mercury, cadmium, and zinc), PAHs, and PCBs.  Heavy metals found at OU 1 are "hazardous substances" within the meaning of 42 U.S.C. § 9601(14).

Complaint in
United States v. The City of Philadelphia, et al.

4

13.     In 2000, EPA conducted additional sampling at the Clearview Landfill, the
Eastwick Neighborhood, and the Eastwick Recreation Center to further characterize the nature
and extent of contamination.  Samples of surface and subsurface soil, soil gas, shallow
groundwater, residential tap water, and creek sediment were collected.  Upon analysis, samples
from the Clearview Landfill indicated the presence of hazardous substances including, but not
limited to, several VOCs, SVOCs, PCBs, heavy metals, and a pesticide at elevated levels in soils
and groundwater.  Several groundwater samples also contained high levels of arsenic.  Upon
analysis, soil samples taken in the Eastwick Neighborhood and in the vicinity of the Eastwick
Recreation Center indicated the presence above screening levels of several SVOCs, metals, and one
type of PCB mixture.  VOCs, SVOCs, PCBs, heavy metals are "hazardous substance" within the
meaning of 42 U.S.C. § 9601(14).  Pesticides also have constituents which are hazardous substances
under CERCLA.

14.     As a result of EPA's investigations, on June 14, 2001, the Clearview Landfill,
including portions of the Eastwick Neighborhood and the Eastwick Recreation Center were
added to the National Priorities List (NPL) as OU 1 of the Site.  66 Fed. Reg. 32,235 (June 14,
2001).

15.     EPA initiated a Remedial Investigation ("RI") and Feasibility Study ("FS") at
the Clearview Landfill in March 2001.  The RI was completed and a final report submitted in
May 2011.  An addendum to the RI was submitted in August 2012 and the Final FS Report was
submitted in October 2012.  The EPA-approved RI Report identified elevated levels of numerous
hazardous substances present in the landfill waste and soils including inorganics (lead, arsenic,
aluminum, iron, cadmium, copper, and zinc), SVOCs (particularly PAHs, such as
benzo(a)pyrene), PCB-1260 (Aroclor) which exceeded EPA Principle Threat Waste Criteria, and

Complaint in
United States v. The City of Philadelphia, et al.

5

several pesticides. These same hazardous substances were also found in the Eastwick City Park although at a lower frequency of screening criteria exceedances and generally at lower concentrations. PAHs were the most prominent hazardous substances detected at elevated levels in the Eastwick Neighborhood. PCB-1260 was also detected at several locations. The EPA-approved RI Report ultimately identified unacceptable potential risks or hazards to current and future human and ecological receptors due to the presence of OU 1-related hazardous substances in soils, groundwater, and fish tissue.

16.     On September 27, 2011, EPA Region III approved a Request for Funding of a Removal Action ("Action Memo") requesting funding and approval of a Removal Response Action to address the PCB contamination on portions of the Site. On April 12, 2012, EPA Region III amended the Action Memorandum to request additional funding, a change in scope of the Removal Action, and exemption to the $2 million and 12 month statutory limits. A total of 3,955.9 tons of soils regulated by the Toxic Substances Control Act, 15 U.S.C. §§ 2601–2629 were removed from the Site. On July 21, 2016, EPA approved a Request for Increased Funding and a Change of Scope for a Removal Action at OU 1 to address PAH and lead contamination in soils in the Eastwick Neighborhood. Between July 2016 and June 30, 2017, EPA removed contaminated soils from 31 residential yards in the Eastwick Neighborhood.

17.     In September 2014, EPA issued the Record of Decision for the Lower Darby Creek Area Superfund Site, OU 1 - Clearview Landfill Soils & Waste ("OU 1 ROD"). The selected remedy for OU 1 includes but is not limited to:

   a.   installation, maintenance and monitoring of an evapotranspiration ("ET") Cover
      System over approximately 50 acres, including relocation of on-site businesses and

Complaint in
United States v. The City of Philadelphia, et al.

6

demolition of all structures within the ET Cover boundary, Site grading, storm water controls and erosion controls along the east bank of Darby Creek;

b.  excavation and consolidation of wastes and soils containing hazardous substances above cleanup levels within and beneath the ET Cover;

c.  removal and off-site disposal of PCB principal threat wastes;

d.  construction and maintenance of a leachate collection trench along the landfill creek banks down to the mean high tide elevation of the creek and construction, maintenance, and monitoring of engineered wetlands to treat hazardous substances to surface water discharge requirements;

e.  long-term monitoring of groundwater, leachate, landfill gas, surface water, and sediment, to evaluate remedy performance and effectiveness; and

f.  land and groundwater use restrictions to be implemented and maintained through institutional controls ("ICs") and engineering controls to protect the integrity of the selected remedy including the ET Cover, leachate collection trench, engineered wetlands, and prevent exposure to soils outside of the ET Cover above cleanup levels.

18.  The OU 1 ROD selected soil cleanup levels for the following hazardous substances: cadmium, copper, lead, zinc, benzo(a)anthracene, benzo(a)pyrene, benzo(b)fluoranthene, benzo(k)fluoranthene, dibenzo(a,h)anthracene, indeno(1,2,3-cd)pyrene, total PAHs, high molecular weight PAHs, PCB-Aroclors 1260 and 1254.

19.  Between February 2015 and March 2017, EPA conducted sampling of approximately 105 residential yards as part of the OU 1 Pre-Design Investigation ("PDI"). The purpose of the sampling was to delineate the area of residential properties within the Eastwick

Complaint in
United States v. The City of Philadelphia, et al.

7

Neighborhood that were impacted by OU 1 contaminants in soils.  Benzo(a)pyrene and dibenzo(a,h)anthracene were the hazardous substances most frequently identified above the OU 1 ROD soil cleanup levels; they were also present at the highest concentrations relative to the cleanup levels.  Detections of heavy metals and PCBs above soil cleanup levels were infrequent.

20.     On January 4, 2017, EPA finalized a second Memorandum to the Site File documenting a non-significant change to the selected remedy for OU 1.  This change was necessary because the OU 1 ROD did not include a cost estimate addressing all residential yards with soils contaminated with hazardous substances, as all residential yards with contaminated soils had not been  identified at the time of the OU 1 ROD finalization.  The purpose of the second Memorandum was to document and include these additional estimated costs to address contaminated soils at all identified residential properties impacted by OU 1.

21.     In August 2017, EPA initiated the Remedial Action for OU 1 commencing with the excavation of residential yards in the Eastwick Neighborhood with one or more hazardous substances exceeding the soil cleanup levels from the OU 1 ROD and beginning the process for the permanent relocation of the businesses currently operating on the Clearview Landfill.

22.     EPA and the Department of Justice have undertaken other response activities in connection with OU 1 including, but not limited to, enforcement related activities.

23.     Actions taken under Sections 104 and 107 of CERCLA, 42 U.S.C. §§ 9604 and 9607, in connection with OU 1 have caused the United States to incur response costs of, approximately,  $19,846,689.77[1].  The United States' response costs at OU 1 have been incurred

---

[1] The OU 1 costs include $12,602,399.32 in OU 1 related remedial costs through 11/30/2016, $7,244,290.45 in OU 1 Removal costs through 6/27/2017.  In addition, through 11/30/2016 EPA

in a manner not inconsistent with the National Oil and Hazardous Substances Pollution

Contingency Plan ("National Contingency Plan" or "NCP"), 40 C.F.R. Part 300.

24.     In approximately 1958, PRA acquired approximately 2,300 acres located adjacent

to the North and East boundaries of the Clearview Landfill which came to be known as the

"Eastwick Redevelopment Area."  Prior to and after the time the PRA acquired the Eastwick

Redevelopment Area, hazardous substances, within the meaning of 42 U.S.C. § 9601(14), from

the Clearview Landfill were, directly or indirectly, released onto or directly disposed of on those

portions of the Eastwick Redevelopment Area immediately abutting the Clearview Landfill.  On

information and belief, development activities undertaken by PRA between approximately 1958

to the early 1970s on the Eastwick Redevelopment Area that immediately abutts the North and

East boundaries of the Clearview Landfill resulted in the further disposal or re-disposal of

hazardous substances on property within the Eastwick Neighborhood.

25.     On September 22, 1969, the City acquired from the PRA title to approximately 27

acres of land within the Eastwick Redevelopment Area.  Land acquired by the City was located

immediately adjacent to the North and East boundaries of the Clearview Landfill (hereafter, the

"City Park Property").  At and after the time the City acquired the City Park Property, hazardous

substances, within the meaning of 42 U.S.C. § 9601(14), from the Clearview Landfill were,

directly or indirectly, released onto, or directly disposed of on portions of the City Park Property.

As of the date of this complaint, the City remains the current owner of the City Park Property.

---

has incurred $2,826,446.04 in Site-wide related costs, a portion of which are attributable to OU
1.

Complaint in
United States v. The City of Philadelphia, et al.

9

26.     From approximately 1967 to 1973, the City arranged for and disposed of municipal solid waste, incinerator ash, and incinerator residue at the Clearview Landfill.  Upon information and belief, the United States asserts that the incinerator ash and incinerator residue disposed of by the City at the Clearview Landfill contained hazardous substances within the meaning of 42 U.S.C. § 9601(14), including but not limited to heavy metals, such as lead and cadmium, as well as dioxins, PAHs, and organic and inorganic chemicals not completely destroyed by the incineration process.

27.     Neither the City nor the PRA have taken any "response," within the meaning of 42 U.S.C. § 9601(25), to address the hazardous substances at the Clearview Landfill, City Park Property, or the Eastwick Neighborhood.

## FEDERAL LAW GOVERNING CLAIM FOR RELIEF

28.     Section 104(a)(1) of CERCLA, 42 U.S.C. § 9604(a)(1), provides in pertinent part:

Whenever [ ] any hazardous substance is released or there is a substantial threat of such a release into the environment . . . the President is authorized to act, consistent with the national contingency plan, to remove or arrange for the removal of, and provide for remedial action relating to such hazardous substance . . . at any time (including its removal from any contaminated natural resource), or take any other response measure consistent with the national contingency plan which the President deems necessary to protect the public health or welfare or the environment.

29.     Section 104(b)(l) of CERCLA, 42 U.S.C. § 9604(b)(1), provides in pertinent part:

Whenever the President is authorized to act pursuant to subsection (a) of this section [i.e. 42 U.S.C. § 9604(a)] . . . he may undertake such investigations, monitoring, surveys, testing, and other information gathering as he may deem necessary or appropriate to identify the existence and extent of the release or threat thereof, the source and nature of the hazardous substances . . . involved, and the extent of danger to the public health or welfare or to the environment. In addition, the President may undertake such planning, legal, fiscal, economic,

Complaint in
United States v. The City of Philadelphia, et al.

10

engineering, architectural, and other studies or investigations as he may deem
necessary or appropriate to plan and direct response actions, to recover the costs
thereof, and to enforce the provisions of this chapter.

30.     The President has delegated his authority under Sections 104(a) and (b) of

CERCLA, 42 U.S.C. §§ 9604(a) and (b), to the Administrator of the EPA to arrange for the

cleanup of hazardous waste or to conduct investigations and studies as necessary to determine

the need for, and extent of, such a cleanup.

31.     Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), provides in pertinent part:

Notwithstanding any other provision or rule of law, and subject only to the
defenses set forth in subsection (b) of this section [i.e. 42 U.S.C. § 9607(b)] . . .
    (1) the owner and operator of a . . . facility,
    (2) any person who at the time of disposal of any hazardous
    substance owned or operated any facility at which such hazardous
    substances were disposed of,
    (3) any person who by contract, agreement, or otherwise arranged for
    disposal or treatment, or arranged with a transporter for transport for
    disposal or treatment, of hazardous substances owned or possessed by
    such person, ... at any facility ... owned or operated by another party or
    entity and containing such hazardous substances, and
    (4) any person who accepts or accepted any hazardous substances for
    transport to disposal or treatment facilities, incineration vessels or sites
    selected by such person, from which there is a release, or a threatened
    release, which causes the incurrence of response costs, of a hazardous
    substance, shall be liable for -
        (A) all costs of removal or remedial action incurred by the
        United States Government or a State . . . not inconsistent
        with the national contingency plan; . . .
        (D) the costs of any health assessment or health effects
        study carried out under section 9604(i) of this title.

32.     The National Contingency Plan provides the "procedures and standards for

responding to releases of hazardous substances, pollutants, and contaminants . . ." 42 U.S.C. §

9605(a).  The NCP is codified at 40 C.F.R. Part 300.

Complaint in
United States v. The City of Philadelphia, et al.

11

33.     Section 107(a)(4) of CERCLA, 42 U.S.C. § 9607(a)(4), also provides that "[t]he amounts recoverable in an action under this section shall include interest on the amounts recoverable under subparagraphs (A) through (D)."

34.     Liability under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), is strict and joint and several.

35.     Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), entitles the United States to obtain a declaratory judgment on liability for future response costs: "[T]he court shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages."

## FIRST CLAIM FOR RELIEF
(Recovery of Response Costs from the City under CERCLA § 107)

36.     The United States re-alleges and incorporates by reference paragraphs 1 through 35, above, as if fully set forth below.

37.     The Site is a "facility" as that term is defined in Section 101(9) of CERCLA, 42 U.S.C. § 9601(9), and as that term is used in Section 107 of CERCLA, 42 U.S.C. § 9607.

38.     VOCs, SVOCs, PCBs, PAHs, and heavy metals present on OU 1 are "hazardous substances" within the meaning of Sections 101(14) and 107(a) of CERCLA, 42 U.S.C. §§ 9601(14) and 9607(a).

39.     There have been and are "releases" of hazardous substances within the meaning of Sections 101(22) and 107(a) of CERCLA, 42 U.S.C. §§ 9601(22), and 9607(a), on and from the Site.

40.     Hazardous substances were disposed of at the Site within the meaning of Sections 101(29) and 107(a) of CERCLA, 42 U.S.C. §§ 9601(29) and 9607(a).

Complaint in
United States v. The City of Philadelphia, et al.

12

41.     As a result of the disposal and releases or threatened releases of hazardous substances from OU 1, the United States has incurred and will continue to incur "removal" and "remedial action" costs, to "respond" to the threats to the environment and human health and public welfare posed by OU 1. *See* Sections 101(23), (24) and (25) of CERCLA, 42 U.S.C. §§ 9601(23), (24) and (25), and Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

42.     The United States has undertaken and may undertake further response actions at OU 1 to protect the environment and human health and public welfare, including removal and remedial actions, in response to releases or threatened releases of hazardous substances, pollutants, or contaminants within the meaning of Sections 104 and 107 of CERCLA, 42 U.S.C. §§ 9604 and 9607.

43.     The City is a "person" within the meaning of Sections 101(21) and 107 of CERCLA, 42 U.S.C. §§ 9601(21) and 9607.

44.     The City is currently the owner of the City Park Property that is within OU 1 and upon which hazardous substances are present. The City is therefore jointly and severally liable under Section 107(a)(1), 42 U.S.C. § 9607(a)(1), for all OU 1 response costs associated with the City Park Property, including costs of removal and remedial actions incurred by the United States not inconsistent with the National Contingency Plan, plus interest on those costs.

45.     The City was the owner of the City Park Property that is within OU 1 and upon which hazardous substances were disposed of during the period of City ownership. The City, therefore, is jointly and severally liable under Section 107(a)(2), 42 U.S.C. § 9607(a)(2), for all OU 1 response costs associated with the City Park Property, including costs of removal and

remedial actions incurred by the United States not inconsistent with the National Contingency Plan, plus interest on those costs.

46.     The City by contract, agreement, or otherwise, arranged for the disposal of incinerator ash at, and transported incinerator ash for disposal to, the Clearview Landfill.  The incinerator ash contained hazardous substances.  The City, therefore, is jointly and severally liable under Sections 107(a)(3) and (4), 42 U.S.C. §§ 9607(a)(3) and (4), for all OU 1 response costs, including costs of removal and remedial actions incurred by the United States not inconsistent with the NCP, plus interest on those costs.

47.     The EPA continues to incur response costs in responding to releases or threatened releases of hazardous substances on OU 1.

48.     The response actions taken by the United States on OU 1 were and are necessary to protect the public health or welfare or the environment, and were not inconsistent with the NCP.

49.     The United States has satisfied any and all conditions precedent to the response actions taken and to recovery of its costs incurred under Section 107 of CERCLA, 42 U.S.C. § 9607.

50.     The City is jointly and severally liable to the United States for all response action costs, not inconsistent with the NCP, plus interest, incurred or to be incurred by the United States in connection with the remediation of OU 1 including an allocated share of Site-wide response costs, enforcement costs, and pre-judgment interest on all such costs, pursuant to Sections 107(a) of CERCLA, 42 U.S.C. § 9607(a).

## SECOND CLAIM FOR RELIEF
(Recovery of Response Costs from the PRA under CERCLA §§ 107)

51.     The United States re-alleges and incorporates by reference paragraphs 1 through 50, above, as if fully set forth below.

52.     The PRA is a "person" within the meaning of Sections 101(21) and 107 of CERCLA, 42 U.S.C. §§ 9601(21) and 9607.

53.     Prior to the time PRA acquired the Eastwick Redevelopment Area, and during the time PRA owned the Eastwick Redevelopment Area, hazardous substances, within the meaning of 42 U.S.C. § 9601(14), from the Clearview Landfill were, directly or indirectly, released onto or directly disposed of on those portions of the Eastwick Redevelopment Area that immediately abutted the Clearview Landfill.  Because the PRA owned the property at the time hazardous substances were disposed there, it is jointly and severally liable under Section 107(a)(2), 42 U.S.C. § 9607(a)(2), for all OU 1 response costs, including costs of removal and remedial actions not inconsistent with the National Contingency Plan, plus interest on those costs, incurred by the United States in connection in that portion of the Eastwick Neighborhood owned by the PRA within OU 1.

54.     Between approximately 1958 and the early 1970s, development activities undertaken by the PRA in the Eastwick Neighborhood within OU 1 resulted in the disposal or re-disposal of hazardous substances on portions of OU 1.  Because the PRA disposed of, or caused the re-disposal of, hazardous substances in the Eastwick Neighborhood within OU 1, it is therefore jointly and severally liable as a past operator under Section 107(a)(2), 42 U.S.C. § 9607(a)(2), for all OU 1 response costs, including costs of removal and remedial actions not inconsistent with the National Contingency Plan, plus interest on those costs, incurred by the

United States in connection with the portion of the Eastwick Neighborhood within OU 1 owned by the PRA.

55.    The EPA continues to incur response costs in responding to releases or threatened releases of hazardous substances on and from that portion of the Eastwick Neighborhood within OU 1 owned by the PRA.

56.    The response actions taken by the United States in the portion of the Eastwick Neighborhood within OU 1 were necessary to protect the public health or welfare or the environment, and were not inconsistent with the NCP.

57.    The United States has satisfied any and all conditions precedent to the response actions taken and to recovery of its costs under Section 107 of CERCLA, 42 U.S.C. § 9607.

58.    The PRA is jointly and severally liable to the United States for all response action costs, not inconsistent with the NCP, plus interest, incurred or to be incurred by the United States, in connection with the remediation of that portion of the Eastwick Neighborhood located within OU 1 including Site wide response costs, enforcement costs, and pre-judgment interest on all such costs, pursuant to Sections 107(a) of CERCLA, 42 U.S.C. §§ 9607(a).

## **PRAYER FOR RELIEF**

WHEREFORE, the United States requests that the Court enter a judgment against the Defendants, jointly and severally, as follows:

A.    Enter judgment in favor of the United States against Defendants pursuant to Sections 107 of CERCLA, 42 U.S.C. § 9607(a) ordering Defendants to pay response costs, including interest, incurred by the United States in conducting response activities in connection with OU 1;

Complaint in
United States v. The City of Philadelphia, et al.

   B.  Enter a declaratory judgment pursuant to Sections 113(g)(2) of CERCLA, 42

        U.S.C. § 113(g)(2), finding Defendants liable in any subsequent action or actions

        for further response costs incurred in connection with OU 1 by the United States;

   C.  Award the costs of this action to the United States; and

   D.  Grant such other and further relief as the Court deems just and proper.

Dated:  June 4, 2019.

                     Respectfully Submitted,

                     **FOR THE UNITED STATES OF AMERICA**
                     JEFFREY BOSSERT CLARK
                     Assistant Attorney General
                     Environment & Natural Resources Division
                     United States Department of Justice

                     JOHN N. MOSCATO
                     Senior Counsel
                     Environmental Enforcement Section
                     United States Department of Justice
                     999 18th Street, South Terrace, Suite 370
                     Denver, Colorado 80202
                     Telephone: (303) 844-1380
                     Facsimile: (303) 844-1350
                     Email: john.moscato@usdoj.gov
                     Colorado Bar No. 30394

OF COUNSEL
Donzetta Thomas
Senior Assistant Regional Counsel &
Office of Regional Counsel (Mailcode: 3RC50)
US EPA, Region III
1650 Arch Street, Philadelphia, PA 19103

Complaint in
United States v. The City of Philadelphia, et al.

## CERTIFICATE OF SERVICE

I hereby certify that on June 5, 2019, the foregoing was filed electronically and is available for viewing and downloading from the ECF system.  I further certify that a copy was mailed by U.S. postal Service first class mail to the following party:

Larry Silver
Langsam Stevens Silver & Hollaender
1818 Market Street
Suite 2610
Philadelphia, PA 19103-5319

/s/ John N. Moscato